UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARABIA WHITFIELD, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 09-1877 c/w: 09-8074** |
| **WARREN RILEY, ET AL** | **SECTION M, MAG. 2**<br>**(APPLIES TO NO.: 09-8074)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
PARTIAL MOTION TO DISMISS PURSUANT TO RULES
12(b)(1) AND 12(b)(6) AND MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO RULE 12(c) IN CIVIL ACTION NO. 09-8074**

**MAY IT PLEASE THE COURT:**

**The Plaintiffs' Claims**

The plaintiffs opposing this motion in part are Adolph Grimes, Jr. and Patricia Grimes, parents of the deceased, Adolph Grimes, III.[1] They have alleged a *Monell* Fourth Amendment federal civil rights violation on behalf of their son pursuant to *42 U.S.C. 1983* as a result of his murder by some of the defendant-officers on January 1, 2009.[2] They have also alleged a violation of their Fourteenth Amendment substantive due process right to

---

[1] Adolph Grimes, Jr. died during the pendency of this litigation. He is now represented by succession representatives. Rec. Doc. 63.

[2] Rec. Doc. 1, ¶¶ 4-5, 22-25, 37-38, 40-44.

liberty.³ The *1983* claims include allegations that the defendant-officers conspired after the fact to cover up their wrong doing,⁴ and a *Monell* claim against the defendant City of New Orleans and Warren Riley.⁵ In addition, the father, Adolph Grimes, Jr., has alleged that he was illegally arrested by two of the defendant-officers following his son's murder, in violation of the Fourth Amendment.⁶ He is also alleging a supplemental state law claim for this false arrest and the City's vicarious liability for the same.

*La.C.C. Art. 2315.6* permits the parents of a child to recover damages for mental anguish or emotional distress if they "view an event causing injury" to their child, or if they "come upon the scene of the event soon thereafter". This is referred to as a "bystander claim".

> *A. The following persons who view an event causing injury to another person, or who come upon the scene of the even soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:*
>
> *(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.*
> *(2) The father and mother of the injured person, or either of them.*
> *(3) The brothers and sisters of the injured person or any of them.*

---

³*Id.*, ¶¶'s 28 and 32.

⁴*Id.*, ¶ 29.

⁵*Id.*, ¶¶'s 4-5, 22-25, 37-38, 40-44.

⁶*Id.*, ¶¶'s 19, 27, 33.

> *(4) The grandfather and grandmother of the injured person, or either of them.*
>
> *B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.[7]*

The Grimes have asserted a state law bystander claim against the defendant-officers in their complaint.[8] Both also claim that the defendant City is vicariously liable for the tortious actions of the defendant-officers that resulted in their bystander claim.[9] Finally, the Grimes have alleged a claim against the City's for its direct liability for their injuries as a result of its negligence in hiring, retaining, supervising and disciplining the defendant-officers.[10]

Immediately prior to his murder on New Year's Day 2009, Adolph Grimes, III was at 1717 Governor Nichols Street visiting his grandmother, mother and father. His car was parked near the front of the residence. Minutes after kissing his mother good night and leaving the house he was ambushed and shot as he sat in his still parked car. His mother heard the gunshots and ran outside where she observed her son's bullet-ridden car with the

---

[7] La. C.C. Art. 2315.6. Liability for damages caused by injury to another.

[8] Rec. Doc. 1, ¶¶'s 9, 16-17, 19-20, 44.

[9] *Id.*, ¶ 46.

[10] *Id.*, ¶¶'s 22-25, 45.

driver door open, the overhead light on, and the rear windshield shot out. She believed her son had been the victim of a drive-by shooting. As she ran towards the car the defendants blocked her and forced her back into the house. She repeatedly attempted to run to her son but was ordered or forced back into the house. She knew when she saw the car that her son had been killed. As a result of witnessing her son's death she sustained severe debilitating mental anguish and emotional distress.[11]

The plaintiff Adolph Grimes, Jr. was also at 1717 Governor Nichols. He also heard the gunshots and rushed out of the residence to check on his son. He observed the bullet-ridden car and knew his son had been murdered. After confronting the defendants about his son's death he was arrested. As a result of witnessing his son's death he sustained severe debilitating mental anguish and emotional distress.[12]

**The Defendants' Motion to Dismiss**

The defendants move to dismiss the Grimes' *42 U.S.C. § 1983* Fourth Amendment claim for the civil rights violation that resulted in the death of their son based on the parents' lack of standing. To the extent the complaint alleges a Fourteenth Amendment violation by the Grimes for their having personally witnessed their son's death, the defendants assert the plaintiffs have failed to state a cause of action. Finally, the defendants move to dismiss both their Fourteenth Amendment conspiracy and *Monell* claim on the basis of no cause of action.

To the extent the Grimes have alleged a Fourteenth Amendment claim under *42 U.S.*

---

[11]*Id.*, ¶¶'s 16-17.

[12]*Id.*, ¶¶'s 19-20.

*§1983* as a result of having witnessed the death of their son, the plaintiffs do not oppose the defendants' Motion to Dismiss. Nor do the Grimes oppose the dismissal of any Fourth Amendment claim under *42 U.S.C. §1983* for their son's murder, or their conspiracy claims against the defendants. The Grimes concede they have no standing as to these claims. Finally, the Grimes concede their lack of standing as to the *Monell* claims, and therefore do not oppose dismissal of said claims.

The defendants also move to dismiss Mrs. Grimes' state law claims for Assault, Battery, False Arrest, Unlawful Search and Seizure; Mrs. Grimes, never intended to make those claims and to the extent they appear in the complaint agree they should be dismissed.

The defendants have not moved to dismiss Mr. Grimes' federal civil rights claim for his illegal arrest, nor do they seek dismissal of his supplemental state law claim for false arrest. Likewise they have not moved to dismiss the plaintiffs' state law claims against the City for negligence in hiring, retaining, supervision and discipline.

The defendants are moving to dismiss the Grimes state law claim brought pursuant to *La. C.C. Art. 2315.6*. The motion to dismiss this claim is opposed by the Grimes for the reasons hereinafter stated.

**Both Mr. And Ms. Grimes Have Sufficiently Pled A Bystander Claim Under La. C.C. Art. 2315.6**

The Grimes' bystander claim is spelled out in the following paragraphs of the original complaint.

> 8. On or about January 1, 2009 at approximately 3:10 a.m., the defendants, MEISCH, SCANLAN, LAPIN, BARR, KELLER,

WHITE, ALONZO, AUSTIN and BOOTH, acting in their capacity as New Orleans police officers intentionally and/or negligently shot to death the plaintiffs' major son, Adolph Grimes, III.[13]

9. The shooting occurred as Adolph Grimes, III sat peaceably in his car in the 1700 block of Governor Nichols Street in New Orleans, Louisiana.[14]

14. As a result of the attack Adolph Grimes, III died.[15]

15. The above described incident occurred on Governor Nichols Street in front of or near the front entrance of the residence located at 1717 Governor Nichols Street.[16]

16. At the time of the shooting Adolph Grimes, III was in his parked car at that location because he had just exited his grandmother's house at 1717 Governor Nichols Street. Still in the house when he was killed were his parents, the plaintiffs, Adolph Grimes, Jr. and Patricia Grimes. Adolph Grimes, III had left the house minutes prior to his execution. He was waiting in his car for his cousin. The first shots fired at Adolph Grimes, III by the defendants occurred only minutes after his mother the plaintiff, Patricia Grimes, had kissed him goodbye. The plaintiff, Patricia Grimes, was in the front room on 1717 Governor Nichols when she heard the gunshots being fired at her son. Immediately after the shots were fired she ran outside to check on the safety of her son. As she exited the front door she observed her son's bullet ridden vehicle with its lights on, the driver's door open, the overhead light on and the rear windshield shot out. At that point she believed her son had been the victim of a drive-by shooting. As she ran down her steps towards the car which was only feet away she was forced back into her house by the defendants who claimed at that time that they were police. She made several more efforts to run to her son after that but on each occasion she was ordered and forced back into her house. She knew immediately upon seeing her son's vehicle that he had been shot to death by the

---

[13]*Id.*, ¶ 8.

[14]*Id.*, ¶ 9.

[15]*Id.*, ¶ 14.

[16]*Id.*, ¶ 15.

defendants.[17]

17. As a result of witnessing her son's death, the plaintiff, Patricia Grimes, sustained severe, debilitating and foreseeable mental anguish and/or emotional distress.[18]

19. After the shocked and emotional distraught Patricia Grimes was forced back into her mother's home at 1717 Governor Nichols by her son's killers, she advised her husband, the plaintiff, Adolph Grimes, Jr., what had occurred. Stunned, shocked and emotionally distraught the plaintiff, Adolph Grimes, Jr., ran out of the house to his son's bullet ridden car where he confronted the defendants about his son's condition. In response, the defendants, TERRY BAHAM and JOSEPH MOORE, handcuffed and arrested him and placed him in a police car where he was detained for an hour. Subsequently, the defendants, BAHAM and MOORE, took the plaintiff, Adolph Grimes, Jr., to the Homicide Bureau where he was questioned. Ultimately he was released at approximately 6:00 a.m. The plaintiff was never advised why he was arrested. At no time prior to his arrest did he commit any illegal offense.[19]

20. Within minutes of his son's execution by the defendants, the plaintiff, Adolph Grimes, Jr., observed his son's bullet ridden vehicle. The plaintiff knew at that time that his son had been killed by the defendants. He was further prevented from any further investigation of the facts surrounding his son's death by the defendants who killed his son. Nonetheless, as a result of witnessing his son's death, the plaintiff, Adolph Grimes, Jr., sustained severe, debilitating and foreseeable mental anguish and/or emotional distress.[20]

44. The acts and omissions of the defendants as described herein were also done with negligence, gross negligence and/or intent, in violation of Louisiana statutory and constitutional law and, with regard to the plaintiffs constituted assault, battery, false arrest, intentional infliction of emotional distress, claims under La.C.C. 2315.6, criminal conspiracy and violation of their right to privacy, liberty, due process and to be free from unreasonable search and

---

[17]*Id.*, ¶ 16.

[18]*Id.*, ¶ 17.

[19]*Id.*, ¶ 19.

[20]*Id.*, ¶ 20.

seizure, under state law.[21]

The defendants suggest *La. C.C. Art. 2315.6* doesn't apply because the Grimes didn't observe their son's execution or see his bullet-ridden body; but instead only heard him shot to death in a hail of bullets, as he sat in his car feet away from them, minutes after telling them goodnight New Year's morning, as they attempted seconds after the shooting to run to his car and render him aid. The statute doesn't require that the plaintiffs actually watch their son's execution. It permits their recovery if they come upon the event causing injury immediately thereafter, which is exactly what occurred in this cases. Although the defendants flagrantly misrepresent in the memorandum that the plaintiffs did not witness the incident, or come upon the scene of the incident shortly thereafter, claims to the contrary are found in paragraphs 16, 19 and 20 of the Grimes' Complaint, the text of which was only partially quoted by the defendants in their memorandum at the plaintiffs' expense.

The recovery of *Lejeune* damages requires proof that: 1) one is a member of the class to whom such a right of action is granted; 2) one saw the injury-causing event or came upon the scene of the event soon thereafter; 3) the harm sustained by the injured person must be such that one can reasonably expect a person in the claimant's position to sustain serious mental anguish or emotional distress; and 4) the mental anguish or emotional distress must be severe, debilitating, and foreseeable.[22]

Of the element regarding the severity of the injuries sustained by the person injured

---

[21]*Id.*, ¶ 44.

[22]*Castille v. La. Med. Mut. Ins. Co.*, 14-519 (La.App. 3 Cir. 11/5/14), 150 So.3d 614.

in the event, the Louisiana Supreme Court has stated:

> The requirements of *Article 2315.6*, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event. The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.[23]

The Grimes were with their son only minutes before he was executed in a hail of gunfire. They heard the gunshots and ran to his gunshot pitted car feet away. It is reasonable to expect that both sustained serious mental anguish which was severe, debilitating, and foreseeable. Although they were not literal eyewitnesses to his execution they observed the traumatic injury-causing event soon thereafter. The Louisiana legislature intended to compensate claimants for their immediate shock after witnessing the direct victim's harm that is both severe and apparent.[24]

## CONCLUSION

The plaintiffs, Mr. and Mrs. Grimes, do not oppose the dismissal of their Fourth Amendment *Monell* claim for the killing of their son or for any conspiracy. Likewise, they do not oppose dismissal of their Fourteenth Amendment claim against the defendants for having witnessed their son's murder. Finally, they did not allege any state law assault,

---

[23] *Trahan v. McManus,* 97-1224, pp. 11-12 (La. 3/2/99), 728 So.2d 1273, 1279-80 (footnotes omitted).

[24] *Guillot v. Doe*, 03-1754, p. 12 (La. App. 3 Cir. 6/30/04), 879 So.2d 374, 383-84.

battery, unlawful search and seizure or false arrest of Patricia Grimes and would therefore not oppose the dismissal of any such claims.

The plaintiffs oppose this Motion to Dismiss their state law bystander claim as they have sufficiently alleged a claim under *La. C.C. Art. 2315.6*, and have requested the court to exercise its supplemental jurisdiction over said claim. They also have a vicarious liability claim against the City as the employer of the defendant-officers who killed their son in this state law bystander claim. The plaintiff, Adolph Grimes, Jr., has alleged that the defendants, Baham and Moore, violated his Fourth Amendment right to be free from unreasonable search and seizure. The defendants have not moved to dismiss this claim or its mirror state law claim for false arrest.

Respectfully submitted;

**GARY W. BIZAL, L.L.C.**

s/GARY W.BIZAL
**GARY W. BIZAL** (La. Bar No. 01255)
4907 Magazine Street
New Orleans, Louisiana 70115
(504)525-1328 Telephone
(504)525-1353 Fax
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2019 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

s/Gary W. Bizal
**GARY W. BIZAL**