ARABIA WHITFIELD, ET AL

CIVIL ACTION

VERSUS

NO. 09-1877 c/w
09-8074

CITY OF NEW ORLEANS, ET AL

SECTION M (2)

## ORDER & REASONS

Before the Court is a motion for partial dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and motion for judgment on the pleadings pursuant to Rule 12(c) in Case No. 09-8074 filed by defendants the City of New Orleans (the "City"), former Superintendent of Police Warren J. Riley, Sgt. Daniel Scanlan, Officer Regina Barr, Officer Collette Booth, Officer Terry Baham, Officer Joseph Moore, Joseph Meisch, Greg Lapin, Steven Keller, Marcellus White, Julio Alonzo, and Larisa Austin (collectively, "Defendants").[1] Plaintiffs Adolph Grimes, Jr.,[2] and Patricia Grimes (collectively, "Plaintiffs"), parents of the deceased, Adolph Grimes, III, oppose the motion.[3] Oral argument on the motion was heard on December 5, 2019.[4] Having considered the parties' memoranda, the record, the arguments made at the hearing, and the applicable law, this Court issues this Order and Reasons.

## I.     BACKGROUND

This case arises out of the death of Adolph Grimes, III, on January 1, 2009.[5] According to Plaintiffs, at around three in the morning, Adolph Grimes, III, exited his grandmother's house,

---

[1] R. Doc. 69.
[2] Adolph Grimes, Jr., died during the pendency of this litigation and is now represented by succession representatives. *See* R. Doc. 63.
[3] R. Doc. 75.
[4] R. Doc. 86.
[5] R. Doc. 1 (Case No. 09-8074).

where Plaintiffs, his parents, remained inside.  Adolph Grimes, III, was in his parked car outside the house when two unmarked police vehicles parked next to his car and defendant police officers approached him.  Under disputed circumstances, Adolph Grimes, III, was shot by the police officers and died as he fled on foot.  According to Plaintiffs, this occurred within minutes of Adolph Grimes, III's having left the house.  Plaintiffs allege that Patricia Grimes was in the front room of the house when she heard the gunshots and, immediately after, she ran outside and observed her son's bullet-ridden vehicle with its lights on, the driver's door open, the overhead light on, and the rear windshield shot out.  They allege that she ran down the steps and was only a few feet away from the car when the police officers stopped her and "forced [her] back into the house."[6]  The same occurred when she attempted to reach the vehicle a few more times.  Patricia Grimes then informed her husband, Adolph Grimes, Jr., of what had happened.  Adolph Grimes, Jr., then also ran out of the house and observed the bullet-ridden vehicle, confronted the police officers about his son's condition, and was handcuffed, arrested, and detained by two of the police officers.  He was later taken to the homicide bureau where he was questioned and eventually released.

Plaintiffs filed this complaint against Defendants, asserting (1) Fourth and Fourteenth Amendment violations arising out of their son's death and a conspiracy to cover up the wrongful death, in violation of 42 U.S.C. § 1983; (2) mirror state law wrongful death and conspiracy claims; (3) Fourth and Fourteenth Amendment violations arising out of Adolph Grimes, Jr.'s arrest and detention, in violation of 42 U.S.C. § 1983; (4) state law claims of assault, battery, false arrest, intentional infliction of emotional distress, bystander injury, criminal conspiracy, and violation of their rights to privacy, liberty, and due process, and to be free from unreasonable searches and

---

[6] *Id.* at 5.

seizures; (5) a state law claim against the City for negligent hiring, supervision, retention, and discipline; and (6) a state law claim for vicarious liability on the part of the City for their other state law claims.

## II.   PENDING MOTION

Defendants seek judgment in their favor and dismissal of various of Plaintiffs' claims. First, they argue that Plaintiffs lack standing and otherwise fail to assert a cause of action under the Fourteenth Amendment or 42 U.S.C. § 1983 for their son's death, having allegedly "witnessed" the death, or any alleged conspiracy.[7]  Second, they maintain that Plaintiffs also lack standing and otherwise fail to state claims against the City or Riley under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[8]  Third, Defendants assert that, as to Patricia Grimes, Plaintiffs fail to allege any facts for state law false arrest, assault, battery, or unlawful search and seizure.[9] Finally, Defendants argue that neither Plaintiff sufficiently states a cause of action under Louisiana Civil Code article 2315.6 for mental anguish and emotional distress because "they did not witness the incident or come upon the scene of the incident shortly thereafter."[10]

Plaintiffs do not oppose dismissal of their § 1983 claims arising out of the death of their son, any alleged conspiracy, and having witnessed their son's death; their *Monell* claims against the City and Riley; their state law wrongful death and conspiracy claims; or Patricia Grimes's state law claims for false arrest, assault, battery, and unlawful search and seizure.[11]  Plaintiffs note that

[7] R. Doc. 69-1 at 7-11.
[8] *Id.* at 11-15.
[9] *Id.* at 15-16.
[10] *Id.* at 16-18.
[11] R. Doc. 75 at 4-5; 9-10.  Plaintiffs' counsel confirmed Plaintiffs' concession to dismissal of these claims at oral argument.  Counsel also confirmed that Plaintiffs do not oppose dismissal of Patricia Grimes's state law intentional infliction of emotional distress, criminal conspiracy, and constitutional claims.  Accordingly, the Court dismisses Plaintiffs' § 1983 claims arising out of the death of their son, any alleged conspiracy, and having witnessed their son's death; their *Monell* claims against the City and Riley; their state law wrongful death and conspiracy claims; Patricia Grimes's state law claims for false arrest, assault, battery, intentional infliction of emotional distress, violation

Defendants have not moved to dismiss Adolph Grimes, Jr.'s federal civil rights or state law claims arising out of his arrest, or Plaintiffs' state law claims against the City for negligent hiring, retention, supervision, and discipline.[12]  Plaintiffs oppose dismissal of their bystander claim under Civil Code article 2315.6.[13]  They argue that while "they were not literal eyewitnesses" to the shooting, they allege that "they observed the traumatic injury-causing event soon thereafter," and therefore sufficiently satisfy the codal requirement that they "come upon the event causing injury immediately thereafter."[14]  Plaintiffs ask the Court to exercise supplemental jurisdiction over this claim.  Finally, they add that because their bystander claim should stand, so should their vicarious liability claim against the City, as far as it is based on the bystander claim.[15]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(6) and 12(c) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements

---

of her right to privacy, liberty, and due process, and unlawful search and seizure; and their state law vicarious liability claim against the City as far as it is based on any other claim dismissed by the Court.
    [12] *Id.* at 5.
    [13] Therefore, the Court only analyzes this claim.
    [14] *Id.* at 8-9.
    [15] *Id.* at 10.

of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Motions to dismiss are disfavored and

rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule (12)(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citation omitted).

## B. Bystander Claims in Louisiana

Article 2315.6 of the Louisiana Civil Code provides in pertinent part:

A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:

…

(2) The father and mother of the injured person, or either of them.

...

    B.  To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. ...

La. Civ. Code art. 2315.6. This provision is the Louisiana legislature's codification of *Lejeune v. Rayne Branch Hospital*, 556 So. 2d 559 (La. 1990), the landmark decision in which the Louisiana Supreme Court departed from previous common law jurisprudence and outlined circumstances under which a bystander could recover mental anguish damages resulting from injury to another person. *See Trahan v. McManus*, 728 So. 2d 1273, 1277-78 (La. 1999) (reviewing jurisprudence before and after *Lejeune*).[16] The Louisiana Supreme Court has since explained that "bystander damages are intended to provide a remedy when severe mental distress arises directly and immediately from the claimant's observing a traumatic injury-causing event to the direct victim," and hence, to recover, "the claimant who observes the injury-causing event (or soon thereafter comes upon the scene of the injury) must be contemporaneously aware that the event has caused harm to the direct victim." *Id.* at 1279. With this background in mind, the court determined that:

> The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event. The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.

*Id.* (footnotes omitted). The Louisiana Supreme Court has further expounded that, in the case of a plaintiff who has not viewed the accident, he or she must "come upon the accident scene soon

---

[16] In addition to codifying the limitations placed by the Louisiana Supreme Court on bystander recovery in *Lejeune*, the legislature also limited recovery to specific categories of persons, including parents of the direct victim. *Trahan*, 728 So. 2d at 1278. The legislature also limited recovery of mental anguish damages resulting from the negligent infliction of injury to the circumstances outlined in article 2315.6. *Id.*

after it has occurred and before any substantial change has taken place in the victim's condition." *Veroline v. Priority One EMS*, 18 So. 3d 1273, 1275-76 (La. 2009).

### C. Analysis

In their brief, Defendants argue that because Plaintiffs' complaint "admits that both of them were not present at their son's shooting death," they fail to state a claim under Louisiana Civil Code article 2315.6, and therefore, no further inquiry is needed.[17]  Plaintiffs respond that, while they do admit they did not view the shooting, article 2315.6 permits recovery "if they come upon the event causing injury thereafter, which is exactly what occurred" here.[18]  At the hearing, Defendants emphasized that recovery was still impermissible because Plaintiffs do not allege that they ever viewed Adolph Grimes, III's deceased body at the scene, but rather only allege that Patricia Grimes heard the gun shots and that both Plaintiffs saw the bullet-ridden vehicle. Defendants noted that the complaint alleges that the victim "attempted to flee on foot from his vehicle" and was shot "[a]s he ran away," and therefore, his body would not have been near the vehicle or in Plaintiffs' line of sight.[19]  Plaintiffs argued that article 2315.6 does not require that the bystander have actually viewed the victim's body, and that the alleged facts (hearing gun shots after the victim had just left the house and then immediately seeing the victim's bullet-ridden vehicle upon exiting the house) are sufficient to give rise to a claim.

Like most claims made under article 2315.6, the alleged facts – parents experiencing the circumstances surrounding the death of their child – are tragic.  At the outset, it should be noted that though courts naturally have sympathy for family members who experience such tragedy, courts must follow the law in determining whether claims such as theirs are cognizable under the

---

[17] R. Doc. 69-1 at 18.
[18] R. Doc. 75 at 8.
[19] *See* R. Doc. 1 at 4.

law. *See Louviere v. Louviere*, 839 So. 2d 57, 61 (La. App. 2002) ("While we have great sympathy for the victims and families of these tragic [events], we note that we are constrained to follow the law.").

At the hearing, Defendants pointed the Court to the Louisiana Supreme Court's decision in *Veroline*, and decisions by the Fifth Circuit and this Court citing *Veroline*, as support for their argument that article 2315.6 requires that bystanders who do not view the injury-causing event, but instead come upon the scene shortly thereafter, actually view the victim's body in order to have a viable claim. *See Veroline*, 18 So. 3d at 1275-76; *Damond v. Craft*, 538 F. App'x 553, 555 (5th Cir. 2013); *Curran v. Aleshire*, 67 F. Supp. 3d 741, 768 (E.D. La. 2014). Defendants stressed that the requirement that the bystander come upon the scene "before any substantial change has taken place in the victim's condition" implies that the claimant must view the victim's body. *See Veroline*, 18 So. 3d at 1275-76.

*Veroline*, however, is less informative than Defendants insist. There, the plaintiff, the victim's brother, was with the victim when she hurt her knee and was subsequently placed in an ambulance twenty miles from the hospital. The plaintiff drove separately to the hospital (embarking before the ambulance) when at some point during the twenty-mile trip, the ambulance sped by with its lights on, causing the plaintiff to believe that his sister, who had recently been diagnosed with reactive airway disease and developed new allergies, had taken a turn for the worse. By the time the plaintiff made it to the hospital, his sister was already in the emergency room. He was unable to see her before she died. The Louisiana Supreme Court explained that the plaintiff failed to satisfy article 2315.6's temporal proximity requirement because "[h]e did not actually view the event that caused his sister's death" (the legally relevant event being the event that occurred in the ambulance, not the knee injury) nor "did he come upon the ***accident scene*** soon

after it had occurred and before any substantial change had taken place in [his sister's] condition." *Id.* at 1276 (emphasis added). Instead, the plaintiff saw his sister at the hospital after she had died there. The pain resulting from viewing her body then is the "anguish and distress that normally accompany an injury to a loved one under all circumstances," a scenario not encompassed by article 2315.6. *Id.* (quoting *Trahan*, 728 So. 2d at 1273). *Veroline* tells us that a plaintiff who does not come upon the accident scene, but rather sees a loved one in a different location, after her condition has substantially changed, is unable to state a bystander claim – even if he could infer from viewing the speeding ambulance that something awful had likely occurred. The decision does not teach whether or not a plaintiff who hears an incident, and comes upon the scene soon thereafter, but does not actually see the victim's condition or person, may recover.

*Damond* is similarly unhelpful. The direct victim there was fatally shot at a gas station and transported by an ambulance to a hospital. The plaintiffs, the victim's siblings, learned that their brother may have been shot and two of them went to the gas station, but the body had already been transported to the hospital. Upon arriving at the hospital, they were neither permitted to view the body nor told whether the victim was indeed their brother. The plaintiffs confirmed the victim's identity as their brother a week later. 538 F. App'x at 554-55. The Fifth Circuit explained that the plaintiffs failed to satisfy the temporal proximity requirement because they did not view the event or come upon the scene soon thereafter, before their brother was transported. The Court distinguished their situation from that in *Louviere*, in which the plaintiffs there had witnessed an unfolding hostage situation involving loved ones "mere yards away," in that the emotional distress of those plaintiffs "resulted from their experience *at the scene* of an ongoing incident" while the *Damond* plaintiffs' anguish was caused by a week-long uncertainty over their brother's condition. *Id.* at 555-56 (citing *Louviere*, 839 So. 2d at 73) (emphasis in original). The *Damond* plaintiffs

did not allege harm from a contemporaneous experience of the legally relevant event, *i.e.*, the shooting. Here, Plaintiffs do allege that their distress resulted from a contemporaneous experience of the shooting: hearing the gun shots and almost immediately seeing their son's bullet-ridden car. *Damond* does not establish whether their experience does or does not fall within the ambit of article 2315.6.

Defendants' other cited authorities also involve issues of temporal proximity to the injury-causing event. *See Curran*, 67 F. Supp. 3d at 768 (no bystander claim where parent did not witness event or arrive at scene soon thereafter); *Daigrepont v. La. State Racing Comm'n*, 663 So. 2d 840, 840-41 (La. App. 1995) (no bystander claim where plaintiff did not witness horse-riding accident, but arrived at scene after son had been transported, was informed of accident, rushed to son's side in hospital emergency room, and later viewed videotape of accident at hospital).[20] Here, Plaintiffs allege that Patricia Grimes heard the shots, immediately ran outside the house, and saw her son's bullet-ridden car (but not her son's body), and that Adolph Grimes, Jr., after being informed of the situation, also ran out of the house to the scene.[21] Persons, with the requisite degree of relationship to the victim, who run to the accident scene soon after the injury-causing event typically satisfy the temporal proximity requirement. *See, e.g., Simmons v. Hartford Ins. Co.*, 786 F. Supp. 574, 575 (E.D. La. 1992) (applying Louisiana law after *Lejeune* but before enactment of article 2315.6, court maintains bystander claim for plaintiff who was informed of accident, rushed to scene, arrived within fifteen minutes after accident, and saw and stayed with daughter); *Monk v. State ex rel. DOTD*, 908 So. 2d 688, 697 (La. App. 2005) (bystander claim maintained for plaintiff who

---

[20] From the given facts, it does not appear that the plaintiff in *Daigrepont* either heard the accident or saw evidence of the accident at the scene, as did Plaintiffs here, and so the decision in *Daigrepont* does not shed light on the issue now before the Court.

[21] While there are differences in the experiences of Plaintiffs, the Court finds it unnecessary to distinguish between them for purposes of this motion.

heard car accident after daughter and grandchildren left her house a few minutes prior, was informed of accident, went to scene, and saw seriously injured daughter, later learning she was dead).

The issue here is whether Plaintiffs sufficiently state a bystander claim under article 2315.6 when they do not allege that they ever saw the victim's body at the scene, but do allege that Patricia Grimes heard the shooting and that both Plaintiffs saw the victim's bullet-ridden car soon thereafter. Louisiana courts use language that implies that a bystander seeking to recover must experience distress from actually seeing the victim's harm. *See Trahan*, 728 So. 2d at 1279 ("victim's ***observable*** harm") (emphasis added); *Guillot v. Doe*, 879 So. 2d 374, 383-84 (La. App. 2004) ("***observation*** of the aftermath of the traumatic injury-causing event soon thereafter," and "immediate shock after ***witnessing*** the direct victim's harm that is both severe and ***apparent***") (emphasis added). Louisiana also requires that the bystander have been "contemporaneously aware that the event has caused severe harm to the direct victim." *Castille v. La. Med. Mut. Ins. Co.*, 150 So. 3d 614, 618 (La. App. 2014). Therefore, the bystander must know, at the scene, that the event has actually caused harm to the bystander's loved one.

In *Dotson v. Edmonson*, 2017 WL 5992078 (E.D. La. Dec. 4, 2017), the plaintiff was speaking on the phone with his son, who had been separated from the plaintiff and their tour group, when he heard his son say "woah" and the call was disconnected. *Id.* at *2. The plaintiff attempted to call his son back but received no answer. As it turned out, his son had been mistakenly arrested and the plaintiff did not see him until arriving at the police station. Yet, the plaintiff claimed he "believed his son had been injured or abducted for over an hour." *Id.* The court dismissed the bystander claim as the plaintiff did not allege that he had viewed the injury-causing event, but only alleged that he had heard the event, and furthermore, the facts showed that, at that time, he was

not aware of any injury to his son – "[a]ll he had heard was [his son] say 'woah.'" *Id.* at *6. The court stressed that recovery is intended when the distress arises from "witnessing a traumatic event which caused the direct victim's immediate harm that is severe and *apparent*." *Id.* (emphasis in original). Patricia Grimes alleges that she heard gun shots and saw her son's bullet-ridden car, which is certainly more indicative of severe harm than hearing a son say "woah" followed by a disconnected phone call. Nevertheless, because she does not allege that she saw her son's body or, for that matter, heard his voice cry out in pain after the gun shots, the Court holds that she has not sufficiently alleged that she was aware of harm to her son at that moment. In other words, the harm to Adolph Grimes, III, was not ***apparent*** to her (or, later, to Adolph Grimes, Jr.).

When the Louisiana Supreme Court determined that it would not "draw the line [for bystander recovery] at viewing the injury-causing event (or the accident in progress)" nor permit recovery for those "who do not view the accident or come upon the scene, but rather merely learn of another's traumatic injury," it cited case law from sister states for the proposition that "the essence of the tort is the shock caused by the perception of the especially horrendous event" and that "the emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident ***and immediate viewing of the accident victim*.**" *Lejeune*, 556 So. 2d at 570 n.11 (quoting *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986), and *Corso v. Merrill*, 406 A.2d 300 (N.H. 1979)) (brackets omitted and emphasis added). The Louisiana Supreme Court noted that several other state courts had allowed recovery "based on the 'sensory and contemporaneous observance' of the victim" because such courts would "generally find that the shock is just as great upon ***viewing a victim*** immediately after the injury-causing event if *at* the accident scene and *before* any material change has occurred in the victim's condition." *Id.* at 565 (bolded emphasis added; italicized emphasis in original)

The cases the *Lejeune* court discussed when formulating its standard (*viz.*, recovery permissible for a bystander who arrives at the scene soon after the event, but before a substantial change in the victim's condition), which the legislature codified in article 2315.6, are informative.[22]  In *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P. 2d 1038 (Alaska 1986), the plaintiffs drove passed an accident, not realizing their daughter had been involved, and arrived home to find she was not there, sensing something was wrong.  *Id.* at 1040.  The father drove back to the accident and ***saw*** his daughter being removed from her crushed car.  Similarly, the mother and sister of the victim in *Gates* did not see their loved one's accident (though the brother did), but they arrived moments after, in time to ***see*** the victim's severely injured body at the accident scene. 719 P.2d at 194.

Only in *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex. App. 1982), did the plaintiff not clearly see the harmed victim after the accident.  *Id.* at 843-44.  There, one of the plaintiffs was riding in a separate vehicle a few minutes behind the vehicle in which her daughter was traveling.  She arrived at the accident scene, saw the crashed vehicles, heard her daughter screaming, and saw her daughter's coat smashed against the vehicle window, but her son held her back when she attempted to go to the collision.  The court's explanation of why it permitted recovery is illuminating:

> [T]he triggering of the mental anguish is not from only perceiving a collision, but from the realization of its consequences … [which] can be produced from the moans and cries of the victim at the accident as well as from the actual observation of the victim.
>
> A mother may witness a violent collision in which her child is involved, but if the child emerges unharmed, there is no sensory perception and no mental injury.
>
> On the other hand, if the mother arrives at the collision moments after it happened and witnesses the child trapped in the car, bleeding and crying, the sensory

---

[22] Only three are discussed because two of the cited cases "applied standards for recovery substantially different from those set forth in *Lejeune* and were incorrectly cited by the *Lejeune* court as allowing recovery by plaintiffs who initially perceive the victim after the accident."  *Simmons*, 786 F. Supp at 577.

perception comes about and the mental injury takes place.

[The mother] was brought so close to the reality of the accident as to render her experience an integral part of it.

*Id.* at 844. Neither the holding in *Lejeune* nor the express wording of article 2315.6 make it clear whether Louisiana law would follow the holding in *Grizzle*.

Louisiana courts permit bystander claims when the plaintiff viewed the injury-causing event or saw the injured victim at the scene before a substantial change in the victim's condition. *See, e.g., Lejeune*, 556 So. 2d at 571 (bystander recovery allowed where plaintiff arrived at hospital shortly after injury-causing event and saw her husband after nurse cleaned blood from his wounds, but before he had been moved or bandaged, so that his injured ***appearance*** had not appreciably changed); *Cox v. Moore*, 805 So. 2d 277, 280-81, 288 (La. App. 2001) (bystander recovery where plaintiff was driving with her daughters and, after car accident, ***saw*** her daughter dying); *Craighead v. Preferred Risk Mut. Ins. Co.*, 769 So. 2d 112, 116, 122 (La. App. 2000) (plaintiff-mother heard car horn and impact of vehicle striking her daughter, and ***saw*** daughter thrown sixty-three feet and suffer fatal injuries; plaintiff-brother also saw accident). Even assuming, though, that Louisiana approves of the rationale in *Grizzle*, such that bystanders could recover when only having heard the victim's cries at the scene, and without having actually observed the victim at the scene, Plaintiffs' alleged facts do not meet its criteria. Hearing gun shots and seeing the victim's bullet-ridden vehicle does not carry the same implications as hearing the victim's screams and seeing her crushed vehicle with her clothing smashed against the window. This is because a bystander in the former situation, unlike the latter, cannot be sure that the victim has actually been hurt. As the *Grizzle* court explained, if a child emerges from a collision unscathed, though the parent saw the collision, there are no recoverable damages for mental anguish. While parents may reasonably infer from such situations that their child has been hurt, unless they can actually

perceive the harm, they do not know whether their child may yet be unharmed. They may only recover for their anguish when it arises from knowing that the tragic event has caused their child's serious injury or death. In *Grizzle*, the victim's screams conveyed to her plaintiff-mother the unmistakable fact of her injuries. Here, that Plaintiffs allege that Adolph Grimes, Jr., "confronted the defendants about his son's condition" when he ran outside indicates that he was not actually certain what that condition was.[23] And Patricia Grimes could not know from having seen her son's bullet-ridden car, but not seeing or hearing him, whether her son was injured at all.

The Court could find only one Louisiana case in which the bystanders recovered despite not having seen the victims or otherwise clearly perceived at the scene that the victims were physically harmed. *See Louviere*, 839 So. 2d at 61, 73. In *Louviere*, six bank employees were held hostage after the perpetrator cleared out the customers in the bank. The family members of the employees were a few blocks away and within sight of the bank as the hostage crisis unfolded, witnessing the comings and goings of law enforcement personnel, becoming aware that one of the hostages had been killed, and waiting for the gradual release of the other hostages. Despite not being able to see or hear what was going on inside the bank, the court upheld an award of bystander damages because the bystanders "experienced the crisis of the hostage situation, as it unfolded mere yards away." *Id.* at 73.

*Louviere* can be read to represent the farthest extension of the *Lejeune* line of cases. If the injury to the hostage victims was the hostage situation itself – that is the "event causing injury" – then it may be said, as did the court in *Louviere*, that the family members as bystanders "experienced the crisis of the hostage situation" in much the same way as bystanders to any other calamity (that is, "brought so close to the reality of the accident as to render [their] experience an

---

[23] R. Doc. 1 at 6.

integral part of it").  In this sense, the hostage victims' experience – including their mental anguish and emotional distress in the crisis – is shared by the bystanders.  Hence, the bystanders know of the victims' injury because it is precisely their own.  The line for bystander recovery in cases such as *Louviere* would be drawn, then, between those at the scene during the hostage event and those who come upon the scene after it is over.  Thus, *Louviere* is distinguishable from the Plaintiffs' case in that the family members in *Louviere* knew that the victims were inside the building and had been taken hostage, while here Plaintiffs were uncertain if Adolph Grimes, III, had been hurt at all.[24]

In conclusion, because Plaintiffs were not contemporaneously aware – that is, they did not ***know*** – at the scene that the gun shots they heard had caused Adolph Grimes, III, harm, nor did they observe him at the scene with injuries to his person, they may not recover under article 2315.6.[25]

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for partial dismissal (R. Doc. 69) is GRANTED.

New Orleans, Louisiana, this 19th day of December, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[24] Regardless, the Court considers *Louviere* at the outer edge of the *Lejeune* line of cases that otherwise only permit recovery for bystanders who ***knew***, at the scene, that the victim had been physically injured.  The Court could not locate any case favorably citing *Louviere*'s *Lejeune* holding in the seventeen years since its publication.

[25] The Court notes that Plaintiffs' counsel also emphasized at the hearing that Plaintiffs were unable to see Adolph Grimes, III's body because certain of the defendant police officers did not allow them to see the body.  The Court finds this point irrelevant to the inquiry.  Article 2315.6 is intended to provide bystanders with compensation for "the immediate shock of witnessing a traumatic event"; it does not account for a situation in which bystanders did not witness the event or observe the victim's harm, even if they ***may*** have but for having been prevented from doing so.