UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARABIA WHITFIELD, *et al.* | CIVIL ACTION |
| VERSUS | NO. 09-1877 |
| | c/w 09-8074 |
| WARREN RILEY, *et al.* | SECTION M (2) |

## ORDER & REASONS

Before the Court is the *Daubert* motion *in limine* of plaintiff Arabia Whitfield to exclude the testimony of Kerry Najolia.[1]  Defendants Warren Riley, Joseph Meisch, Daniel Scanlan, Greg Lapin, Steven Keller, Marcellus White, Julio Alonzo, Larisa Austin, Regina Barr, Colette Booth, and the City of New Orleans (together, "Defendants") oppose the motion.[2]  Whitfield replies in further support of her motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion to exclude Najolia as an expert, but clarifying the permitted scope of his testimony.

## I.    BACKGROUND

This case arises from the fatal police shooting of Adolph Grimes, III in the early-morning hours of January 1, 2009.  In her second amended complaint, Whitfield alleges that the policies and customs of the New Orleans Police Department and the choices of individual officers directly led to Grimes's death.[4]  Defendants tender Najolia as an expert to render his opinion in the areas of "law enforcement or police policies and procedures, and training (including firearms

---

[1] R. Doc. 121.
[2] R. Doc. 132.
[3] R. Doc. 157.
[4] R. Doc. 88 at 16-19.

instruction), survival/defensive tactics, and use of force."[5]    Several consequential facts in this litigation are in dispute including, for example, (1) whether the police dispatch identified the color of a car suspected of fleeing the site of a nightclub shooting,[6] (2) whether the officers identified themselves as police when approaching Grimes's parked vehicle,[7] (3) whether Grimes had his 9mm Glock gun in his hand,[8] and (4) if he did have the gun in his hand, whether he pointed the gun or shot at the officers.[9]

## II.    PENDING MOTION

Whitfield argues that Najolia's testimony must be excluded because it improperly invades the province of the jury by making credibility determinations, deciding ultimate facts in issue, and drawing legal conclusions.[10]  She urges that other Louisiana courts have excluded Najolia from testifying as an expert for these reasons.[11]  Whitfield further states that Najolia does not have the requisite experience or qualifications to opine as to ballistics, gun smithing, or shooting reconstructions.[12]  His testimony would be confusing and not relevant, she says, because it would press the imprimatur of an expert on questions that should be answered by the jury.[13]

In opposition, Defendants contend that experts are meant to draw their conclusions based on assumptions they make about the facts in the case.[14]  They clarify that "Najolia makes certain assumptions or conclusions regarding the actions of the parties and relies upon those in his

---

[5] R. Doc. 132 at 1.
[6] R. Docs. 121-1 at 1-3; 132 at 3-4.
[7] R. Doc. 121-1 at 3-5.
[8] R. Docs. 121-1 at 5-6; 132 at 5-6.
[9] R. Docs. 121-1 at 5-6; 132 at 5-6.
[10] R. Doc. 121-1 at 8-13.
[11] *Id.* at 9-12.
[12] *Id.* at 13-14.
[13] *Id.* at 14-15.
[14] R. Doc. 132 at 9-11.

opinions."[15]  Further, Defendants argue that his qualifications and experience are satisfactory and

can be laid out more comprehensively during *voir dire* at trial.[16]

## III.    LAW & ANALYSIS

### A. *Daubert* Standard

A district court has discretion to admit or exclude expert testimony under the Federal Rules

of Evidence.  *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997).  In *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires

a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence

admitted is not only relevant, but reliable."  Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

The reliability inquiry requires a court to assess whether the reasoning or methodology

underlying the expert's testimony is valid.  *See Daubert*, 509 U.S. at 592-93.  In *Daubert*, the

Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability:

(1) whether the theory has been tested; (2) whether the theory has been subjected to peer review

and publication; (3) the known or potential rate of error; and (4) the general acceptance of the

methodology in the scientific community.  *Id.* at 593-95.  However, a court's evaluation of the

---

[15] *Id.* at 9.
[16] *Id.* at 13-14.

reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may

not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

(1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing

testimony upon professional studies or personal experiences, employs in the courtroom the same

level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at

152.  The party offering the testimony must establish its reliability by a preponderance of the

evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The district court also must determine whether the expert's reasoning or methodology

"fits" the facts of the case and whether it will assist the trier of fact to understand the evidence,

*i.e.*, whether it is relevant. *Daubert*, 509 U.S. at 591.  An expert's testimony is not relevant and

may be excluded if it is directed to an issue that is "well within the common sense understanding

of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir.

2003).

## B. Analysis

Najolia has consulted with law enforcement agencies since 1986.[17]  Before his retirement

in 2015, he spent the last 28 years of his career as an instructor or training director at the Jefferson

Parish Sheriff's Office Training Academy.[18]  Now he works as the superintendent of police for the

East Jefferson, Orleans, and Lake Borgne levee districts.[19]  He has previously been tendered as an

expert in other courts in the fields of police policy, police procedure, police training, police officer

survival/defensive tactics, police use of force, and police K-9.[20]

---

[17] R. Doc. 132-1 at 1.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 3.

Rule 702 requires that an expert be properly qualified.  Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact.  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020).  A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion.  *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

Whitfield only truly challenges Najolia's qualifications as it relates to ballistics, specifically the functioning and inner workings of firearms.[21]  Najolia is "certified by both the National Rifle Association and POST [the Louisiana Peace Officer Standards and Training Council] as a firearms instructor with the pistol, shot-gun, sub-machine gun and police rifle."[22]  Combining these certifications with his law enforcement experience, which includes extensive firearms training and teaching, he is qualified to opine on matters in the areas of both his expertise and his experience in handling firearms.  Any objection to related applications of expertise – here, Najolia's alleged lack of specialization in ballistics – should go to the weight of his testimony.

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'"  *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  As the gatekeeper, a district judge must "extract

---

[21] R. Doc. 121-1 at 13-14.
[22] R. Doc. 132-1 at 1.

5

evidence tainted by farce or fiction.  Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).  "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate.  At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).  Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

The Court reads Najolia's expert report as reciting the predicate facts upon which he relied when forming his conclusions, rather than recommending how the trier of fact should resolve any disputed facts.  *See* Fed. R. Evid. 702(b) (an expert may testify in the form of an opinion if "the testimony is based on sufficient facts or data"); *id.* 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").  Of course, Najolia's choice in selecting the facts he relies upon must be based on evidence that is not the product of pure fantasy.  On this point, Whitfield argues that Najolia completely disregarded the witness statements of Keyneshia and Gail Taylor and Tannis Jacob in preparing his report.[23] However, Najolia did, in fact, review the statements of the Taylors and Jacob in preparing his report, but chose to base his overall conclusions on other testimony.[24]  Whitfield takes issue with this choice.  Importantly though, the cure for such disputes is not to exclude the expert testimony, but to present the contradicting facts in cross-examination.  By such examination, Whitfield can question Najolia on how his expert opinion might change based upon an alternative set of facts.

---

[23] R. Doc. 121-1 at 8.
[24] R. Doc. 132-1 at 4.

6

*See* JOSEPH W. COTCHETT & G. RICHARD POEHNER, FEDERAL COURTROOM EVIDENCE § 702, at 19-9 (5th ed. 2020) ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts.  The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believe one version of the facts and not the other.").  To be clear, Najolia's determinations as to which facts he relied upon should in no way be construed as definitive findings of fact in the case as a whole.

Instead of drawing legal conclusions, Defendants contend that "Najolia's expert testimony is being offered for the purpose of providing the jurors with standards for proper police behavior – standards which the jurors cannot reasonably be expected to correctly know on their own – so that the jury may determine whether or not the Defendant Officers acted within these guidelines or whether they acted outside of those guidelines and, then, on their own, determine the reasonableness of the Defendant Officers' actions."[25]  As long as Najolia's testimony is limited to this expression of its intended purpose, there should not be a problem.  However, counsel are reminded that an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).  Thus, Whitfield is right that Najolia can in no way opine as to the credibility of witness testimony or invade the province of the court or jury.

In light of the foregoing principles, it is unsurprising that Whitfield is concerned with Najolia's summary conclusion in his expert report, which states: "In my opinion, based on the totality of the circumstances, these officers [*sic*] use of force was justified, authorized, necessary

---

[25] R. Doc. 132 at 13.

and in accordance with policy, procedures and protocols.  These officers responded as they were trained based on POST and the New Orleans Police Department training principles."[26] "[A]lthough the expert's opinion may 'embrace' the ultimate issue, the expert should not apply the law to the facts, effectively advising the jury how to vote."  MICHAEL R. FONTHAM, TRIAL TECHNIQUE AND EVIDENCE § 8-6, at 391 (1995).  In his testimony leading up to and including his summary conclusion, Najolia will not be permitted to exceed the bounds of expert testimony by questioning the credibility of witnesses, portraying facts as conclusively determined, applying the law to the facts, or making broad statements of legal conclusions.  For example, many of the statements in the "opinion" section of his report are framed in the language of definitive fact findings as opposed to predicate facts.[27]  In testifying, Najolia – and examining counsel – must take care to draw the correct distinction before the jury.  If this is not done, the Court will have no choice but to limit Najolia's testimony further or to exclude it altogether.  But, in the Court's view, under the particular circumstances presented here, this is best addressed at trial.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion *in limine* of plaintiff Arabia Whitfield to exclude the testimony of Kerry Najolia (R. Doc. 121) is DENIED.

---

[26] R. Doc. 132-1 at 11.

[27] *Id.* at 8-11.  For instance, Najolia states that "[a]lthough the Officers were utilizing unmarked police units, the units were equipped with visible and audible signals."  *Id.* at 8.  This is a statement of fact mislabeled as an opinion. Whether the units were equipped with visible and audible signals is a factual determination that must be made by the jury.  So, for now, the Court understands it to be the statement of a predicate fact informing Najolia's opinions.  In contrast, the statement that "[t]he officers were employed as peace officers by the New Orleans Police Department and were in the performance of their duties during this incident" is an opinion that necessarily relies on assumed facts. Najolia's expertise is applied to analyze the assumed facts and to form the opinion, but the opinion – including the assumed facts upon which it was based – can still be attacked on cross-examination.

New Orleans, Louisiana, this 21st day of April, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE