UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARABIA WHITFIELD, *et al.*　　　　　　　　　　　　CIVIL ACTION

VERSUS　　　　　　　　　　　　　　　　　　　　　NO. 09-1877 c/w
　　　　　　　　　　　　　　　　　　　　　　　　　　09-8074
WARREN RILEY, *et al.*

　　　　　　　　　　　　　　　　　　　　　　　　SECTION M (2)

## ORDER & REASONS

Before the Court is the motion of plaintiff Arabia Whitfield, individually and on behalf of her minor son, to take judicial notice of the Department of Justice's March 16, 2011 report ("DOJ Report").[1] Defendants Warren Riley, Joseph Meisch, Daniel Scanlan, Greg Lapin, Steven Keller, Marcellus White, Julio Alonzo, Larisa Austin, Regina Barr, Colette Booth, and the City of New Orleans (together, "Defendants") oppose the motion.[2] Whitfield replies in further support of her motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion to take judicial notice.

**I.　BACKGROUND**

This case arises from the fatal police shooting of Adolph Grimes, III in the early-morning hours of January 1, 2009. Independent of this incident, on March 16, 2011, the United States Department of Justice, Civil Rights Division (the "DOJ") issued a report investigating the New Orleans Police Department ("NOPD").[4] The DOJ Report found "reasonable cause to believe that NOPD engages in patterns of misconduct that violate the Constitution and federal law."[5] In

---

[1] R. Doc. 123.
[2] R. Doc. 134.
[3] R. Doc. 155.
[4] R. Doc. 123-4.
[5] *Id.* at 7.

preparing the DOJ Report, the investigative team "gathered information through many interviews and meetings with NOPD officers, supervisors and command staff, as well as members of the public, City and State officials, and other community stakeholders."[6] While it largely outlines facts and observations, the DOJ Report also draws conclusions based on these facts. For instance, the DOJ states that "[a]lthough we are continuing to review the Department's data and practices regarding bias-based profiling, what we have found so far is strongly suggestive of differential enforcement for whites and African Americans, most clearly for New Orleans' youngest residents."[7] The 158-page document covers a variety of widely disparate topics including, for example, the use of canines,[8] a protocol for handling domestic violence investigations,[9] and an analysis of the paid-detail system.[10]

## II. PENDING MOTION

Whitfield argues that because the DOJ Report was completed by an agency of the federal government, the contents of the report "are immediately verifiable and thus its authenticity cannot be questioned."[11] She contends that the NOPD accepted the conclusions of the DOJ Report because it began to make institutional changes as a result.[12] The report is especially pertinent to the case at bar, she says, because the DOJ must have considered Grimes's death in preparing the report.[13] She explains that the department's consideration of 27 instances where NOPD officers discharged their firearms at people from January 2009 through May 2010 must necessarily encompass Grimes's shooting on January 1, 2009.[14] The findings in the report, she says, are

---

[6] *Id.* at 26.
[7] *Id.* at 66.
[8] *Id.* at 33-35.
[9] *Id.* at 77-78.
[10] *Id.* at 96-102.
[11] R. Doc. 123-1 at 6-7.
[12] *Id.* at 7.
[13] *Id.* at 7-8.
[14] *Id.*

2

directly relevant to her claims that the City of New Orleans "tolerated, ratified, and has been deliberately indifferent to" patterns of misconduct.[15] Because this case has been pending for over ten years, the DOJ Report is also relevant, she explains, as a snapshot of the practices of the NOPD at the time of Grimes's death.[16]

In opposition, Defendants argue that the DOJ Report is not self-authenticating, is not relevant, and contains hearsay within hearsay and unsupported expert opinions.[17] They contend that the facts in the DOJ Report are not "adjudicative facts" under Federal Rule of Evidence 201 because they are not discrete findings of fact relevant to the parties in the case at bar.[18] The unfairly prejudicial effect of taking judicial notice of the report, they emphasize, is that the facts would be admitted as conclusive.[19] Defendants argue that the facts in the DOJ Report cannot be accurately and readily determined from sources whose accuracy cannot be reasonably questioned.[20]

### III.   LAW & ANALYSIS

#### A. Standard for Judicial Notice

Rule 201 of the Federal Rules of Evidence governs judicial notice of adjudicative facts. An adjudicative fact is a "'controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties.'" *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 334 n.11 (5th Cir. 2001) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)). An adjudicative fact is one normally decided by the factfinder. *Id.* The court may take judicial notice of a fact not subject to reasonable dispute when it:

---

[15] *Id.* at 9.
[16] *Id.* at 11.
[17] R. Doc. 134 at 1.
[18] *Id.* at 5.
[19] *Id.* at 5-6.
[20] *Id.* at 5.

>(1) is generally known within the trial court's territorial jurisdiction; or

>(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

Fed. R. Evid. 201(b).

In a civil case, the effect of such declaration is that "the court must instruct the jury to accept the noticed fact as conclusive." *Id.* 201(f). "A fact that has been judicially noticed is not subject to dispute by the opposing party – indeed, that is the very purpose of judicial notice." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998). A court is required to take judicial notice "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). However, an adjudicative fact must be relevant in order to be noticed in a case. *Vallot v. Cent. Gulf Lines, Inc.*, 641 F.2d 347, 351 (5th Cir. 1981). Judicial notice is reviewed for abuse of discretion. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### B. Analysis

Judicial notice of the 158-page DOJ Report would constitute an unsettling application of Rule 201. "'[J]udicial notice applies to self-evident truths that no reasonable person could question, truisms that approach platitudes or banalities.'" *Wooden v. Mo. Pac. R.R. Co.*, 862 F.2d 560, 563 (5th Cir. 1989) (quoting *Hardy v. Johns-Mansville Sales Corp.*, 681 F.2d 334, 347 (5th Cir. 1982)). For example, judicial notice is proper to accept the heat index on a particular day, *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015), or an accounting firm's registration status available in the public records, *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 558 n.2 (5th Cir. 2018). In direct contrast, the facts in the DOJ Report are hotly disputed and strike to the heart of the case itself. Instead of requesting notice of discrete facts, Whitfield requests that the Court take judicial notice of the entire report. The Court would commit grave error indeed to

4

stamp as conclusive the entirety of an extensive report covering a wide variety of topics, some with undisclosed sources.

Further, the facts in the DOJ Report cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). The DOJ's conclusions on the use of force are largely based on NOPD's self-reporting.[21] It is "based almost entirely upon information provided by NOPD, primarily reports written by NOPD officers and ratified by NOPD supervisors. We did not 'look behind' these materials by, for example, interviewing the individuals against whom force was used or the involved officers, or by reviewing primary source evidence such as audio or video recordings or other forensic evidence."[22] The DOJ observes that the use of NOPD's own reporting as a source likely obfuscates the truth of each incident.[23] Investigations into specific incidents were outside the bounds of the DOJ's goals in preparing the report. The DOJ "did not conduct a criminal investigation, which requires the government to show guilt beyond a reasonable doubt, of any NOPD officer or any other person," and the report makes "no assertions regarding the culpability of any individual."[24] When adjudicative facts cannot be readily confirmed by reliable sources and are admittedly based on suspected inaccuracies, they cannot be the subject of judicial notice.

It is also improper to take judicial notice of mixed questions of fact and law. *Doe v. Mckesson*, 945 F.3d 818, 833 (5th Cir. 2019), *vacated and remanded on other grounds*, 141 S. Ct. 48 (2020). For example, the legal status of an organization "is not immune from reasonable dispute" and judicial notice of such a determination is improper when the issue is indeed disputed

---

[21] *Id.* at 31 n.3.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 7 n.1.

by the parties. *Id.* The DOJ Report is replete with legal conclusions based on the observations of the investigators[25] which makes it an inappropriate candidate for judicial notice.

Whitifield argues that the report can be submitted into evidence because it was prepared by a federal agency, but documents prepared by government agencies are not automatically fodder for judicial notice. For example, a court recently refused to take judicial notice of a report on federal crime, including federal agency response letters, because "the matters asserted within them are not of the 'high degree of indisputability' that the Advisory Committee Notes to Rule 201 indicates 'is an essential prerequisite for a court to take judicial notice of a particular fact.'" *Clark v. Wells Fargo Bank*, 2021 WL 1232785, at *8 (D. Ore. Mar. 31, 2021). Here, there has been no showing of the indisputability of the DOJ Report and its mere status as a report of a federal agency is insufficient to overcome this evidentiary foundation. Simply put, the entirety of the DOJ Report does not amount to the kind of self-evident truths that no reasonable person could question, or truisms that approach platitudes or banalities, as would warrant judicial notice.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of plaintiff Arabia Whitfield, individually and on behalf of her minor son, to take judicial notice of the Department of Justice's March 16, 2011 report (R. Doc. 123) is DENIED.

---

[25] *See id.* at 28 ("We find reasonable cause to believe that NOPD engages in a pattern or practice of unconstitutional force."); *id.* at 35 ("Our review of NOPD officer-involved shootings revealed unconstitutional uses of deadly force, repeated violations of NOPD policy, and critical officer safety issues."); *id.* at 53 ("Our investigation also provided reasonable cause to believe that NOPD officers violate the Fourth Amendment by engaging in a pattern or practice of stopping, searching, and arresting individuals without the requisite reasonable suspicion or probable cause.").

New Orleans, Louisiana, this 21st day of April, 2021.

                                              BARRY W. ASHE  
                                              UNITED STATES DISTRICT JUDGE