UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARABIA WHITFIELD, *et al.*                          CIVIL ACTION

VERSUS                                              NO. 09-1877 c/w
                                                               09-8074
WARREN RILEY, *et al.*

                                                        SECTION M (2)

## ORDER & REASONS

Before the Court is the motion of defendants Warren Riley and the City of New Orleans (together, "Defendants") for judgment on the pleadings or, in the alternative, for summary judgment.[1] Plaintiff Arabia Whitfield, individually and on behalf of her minor son, opposes the motion.[2] Defendants, joined by co-defendants Joseph Meisch, Daniel Scanlan, Greg Lapin, Steven Keller, Marcellus White, Julio Alonzo, Larisa Austin, Regina Barr, and Colette Booth, reply in further support of the motion,[3] and Whitfield submits a surreply.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion because there are disputed material facts.

### I.     BACKGROUND

This case arises from the fatal police shooting of Adolph Grimes, III in the early-morning hours of January 1, 2009. Whitfield brought claims under 42 U.S.C. § 1983 alleging deprivation of Grimes's First, Fourth, and Fourteenth Amendment rights.[5] She brought the claims against, among others, Warren Riley, individually and in his official capacity as the New Orleans chief of

---

[1] R. Doc. 127.
[2] R. Doc. 137.
[3] R. Doc. 146.
[4] R. Doc. 159.
[5] R. Doc. 88 at 4.

police, and the City of New Orleans.[6]  Whitfield argues that the "violations of decedent's rights under the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of the Defendant City of New Orleans, which has tolerated, ratified, and has been deliberately indifferent to [certain enumerated] policies, patterns, practices, and customs."[7]  For example, Whitfield alleges that the "City of New Orleans had a custom and practice of non-uniformed officers, without badges or other identification, approaching citizens rather than having a uniformed tactical team, who are readily identifiable as police officers, approach citizens."[8]  She also alleges that Riley is culpable for failing to supervise or train his officers.[9]

## II.     PENDING MOTION

In their motion, Defendants argue that Whitfield's generic, vague, and conclusory assertions that the failure to train police officers led to Grimes's death cannot form the basis of a § 1983 action.[10]  Defendants claim that Whitfield has not expressly identified a policy that could have contributed to Grimes's death.[11]  To the extent she argues that a constitutional deprivation resulted from the New Orleans police department's policy or practice of allowing nonuniformed officers to approach civilians, Defendants contend that the City had countervailing policies in place that applied and called for the opposite behavior – the conspicuous display of police credentials.[12]  Therefore, say Defendants, Whitfield cannot identify a particular policy that the officers followed

---

[6] *Id.* at 2.
[7] *Id.* at 16.
[8] *Id.* at 3.
[9] *Id.* at 5.
[10] R. Doc. 127-1 at 8-11.
[11] *Id.* at 10-11.
[12] *Id.* at 11-13.

that led to Grimes's death.[13] As for Riley himself, Defendants maintain that he did not participate in the incident in question so he cannot be held personally liable.[14] Finally, Defendants contend that Whitfield has failed to state a defamation claim against Riley.[15]

In opposition, Whitfield argues that she has made detailed allegations of the City's policies and practices causing the deprivation of rights that led to Grimes's death.[16] She contends that either the Defendants' approval of or their deliberate indifference to improper policies and practices directly contributed to the shooting.[17] Whitfield then points to several factual disputes that, she says, preclude summary judgment.[18] However, Whitfield does clarify that she is not bringing any claim for defamation.[19]

### III.   LAW & ANALYSIS

#### A. Applicable Standards

#### 1. Standard for judgment on the pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on 'the substance of the pleadings and any judicially noted facts.'" *Linicomn v. Hill*, 902 F.3d 529, 533 (5th Cir. 2018) (quoting *Machete*

---

[13] *Id.* at 13.
[14] *Id.* at 9.
[15] *Id.* at 13-14.
[16] R. Doc. 137 at 8-12.
[17] *Id.* at 11-12.
[18] *Id.* at 13-23.
[19] *Id.* at 12-13. Whitfield alleges in her complaint that "The actions of Defendant Chief of Police Warren Riley constitute the tort of defamation under the laws of the State of Louisiana." R. Doc. 88 at 18. In her opposition to the motion before the Court, Whitfield states that "Plaintiff has not requested relief from this Court or any other for any defamation committed by Chief Warren Riley or any other employee of the New Orleans Police Department against her slain husband, Adolph Grimes, III," explaining that the allegation of defamation was made only "to show that Chief Warren Riley and others at the New Orleans Police Department had personal knowledge of and personal involvement in the shooting death of Mr. Grimes and the subsequent cover-up of same." R. Doc. 137 at 13 (emphasis omitted). Therefore, based on Whitfield's judicial confession, the Court recognizes and rules that there is no claim of defamation in this case.

*Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015)).  Courts will consider an amended complaint when it supersedes earlier pleadings.  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain

matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### 2. Standard for summary judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive

law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*,

477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B. Analysis**

Section 1983 establishes liability for every person who, under color of state law, deprives an individual of rights, privileges, or immunities secured by the Constitution.  A city can be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Cities cannot be vicariously liable under § 1983 for their employees' actions, but cities are liable for "'their *own* illegal acts.'"  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis in original).

To establish a claim under § 1983 against a local government, the plaintiff must show that action pursuant to an official policy caused their injury.  *Id.*  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* at 61.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id.*  To show that a city's failure to train its employees caused the injury, the failure "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'"  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (alteration omitted).  "Deliberate indifference" requires "'proof that a municipal actor disregarded a known or obvious consequence of his action.'"  *Id.* (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).  For example, "'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious

8

disregard for the consequences of their action – the "deliberate indifference"– necessary to trigger municipal liability.'" *Id.* at 62 (quoting *Bryan Cty.*, 520 U.S. at 407).

Here, Whitfield has made well-pleaded factual allegations to state a plausible claim that the City of New Orleans had in place a policy or practice of directing officers to approach citizens without any indication they represent the police department, which in part caused Grimes's death, and as a result, Defendants are not entitled to judgment on the pleadings. In addition, Whitfield has demonstrated that there are disputed issues of material fact concerning the City's policies and practices as would preclude summary judgment. For example, Whitfield has shown that New Orleans police officers are themselves conflicted as to whether the police action involving Grimes was a surveillance operation or a traffic or suspicious person stop.[20] If there is a dispute about the nature of the stop, Defendants cannot establish at this stage of the litigation whether or not there was a policy in place at the time of the shooting that deprived Grimes of his rights, privileges, or immunities. To be clear, however, it is ultimately Whitfield's burden to prove that the police department's policy regarding identification of its officers caused Grimes's death. Yet, for now, she raises a genuine issue of material fact on this score and also as to whether the department's policy regarding the maintenance of police equipment led to the use of an unmarked car without working lights, which played a role in Grimes's death.[21]

Defendants argue that Riley should not be held individually liable as he was not personally involved in the incident. However, Whitfield insists that (1) Riley's actions and misstatements after the shooting show he had "personal knowledge of and personal involvement in the shooting death of Mr. Grimes and the subsequent cover-up of same"; (2) "[t]his information is also evidence of [Riley's] ratification of the shooting officer's conduct in violation of Mr. Grimes's

---

[20] R. Docs. 137 at 13-18; 150 at 2-3.
[21] R. Doc. 137 at 19-21.

constitutional rights"; and (3) "[t]his personal involvement gives rise to the right to recover from these defendants in their individual as well as official capacities."[22]  Additionally, in her statement of contested facts, Whitfield asserts that "Riley ratified and encouraged the actions of the members of his force in violation of the constitution of the United States when he did not reprimand, discipline, train, or re-train his officers following the death of Mr. Adolph Grimes, III."[23]  At the judgment-on-the-pleadings and summary-judgment stage, this is sufficient to leave open, for later resolution by the factfinder, the factual questions underlying whether Riley should be held liable individually.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendants Warren Riley and the City of New Orleans for judgment on the pleadings or, in the alternative, for summary judgment (R. Doc. 127) is DENIED.

New Orleans, Louisiana, this 4th day of May, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[22] *Id.* at 13.
[23] R. Doc. 137-1 at 1-2.