UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ARABIA WHITFIELD, *et al.*　　　　　　　　　　CIVIL ACTION

VERSUS　　　　　　　　　　　　　　　　　　　NO. 09-1877 c/w 09-8074
　　　　　　　　　　　　　　　　　　　　　　　PERTAINS TO 09-1877
WARREN RILEY, *et al.*

　　　　　　　　　　　　　　　　　　　　　　　SECTION M (2)

## **ORDER & REASONS**

Before the Court is the motion *in limine* of plaintiff Arabia Whitfield to exclude and/or limit the testimony of officers and defendants' expert, Kerry Najolia, regarding extended magazines causing firearms to jam.[1]  Defendants Warren Riley, Joseph Meisch, Daniel Scanlan, Greg Lapin, Steven Keller, Marcellus White, Julio Alonzo, Larisa Austin, Regina Barr, Colette Booth, and the City of New Orleans (collectively, "Defendants") oppose the motion.[2]  Whitfield replies in further support of her motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.　BACKGROUND**

This case arises from the fatal police shooting of Adolph Grimes, III in the early-morning hours of January 1, 2009.  An important factual dispute in this case is (1) whether Grimes was holding his 9 mm gun in his hand, and (2) if he did have the gun in his hand, whether he fired the gun at the officers.  Grimes had a valid permit to carry the 9 mm Glock he had in his car on the night of the shooting.[4]  NOPD Detective Ryan Aucoin examined the 9 mm gun at the scene.[5]  He

---

[1] R. Doc. 170.
[2] R. Doc. 206.
[3] R. Doc. 234.
[4] R. Doc. 122-22.
[5] R. Doc. 122-24 at 2.

testified that "[w]hen I racked the slide of the firearm back, a spent shell casing ejected."[6] Aucoin identified this 9 mm spent casing at the scene.[7] Aucoin also testified that "the weapon was photographed. It was then put in a bag, and then I transported it to central evidence and property."[8] On January 1, 2009, at 7:12 a.m., Aucoin delivered the gun and spent casing to central evidence and property clerk, Delores Fleming, who documented them with receipt number 200900030.[9] Whitfield does not dispute the chain of custody for the gun or spent casing.

Another key factual issue is whether the gun was stovepiped.[10] Whitfield defines the term in the following way:

> "Stovepiping" is a failure to eject malfunction that places a handgun in a completely inoperable state. This is caused when a spent casing is not ejected far enough or fast enough to leave the firearm's ejection port. This causes the spent casing to get caught by the handgun slide, which prevents the firearm from returning to an operable state. "Stovepipe" malfunctions are very easy to spot visibly because the spent casing will be sticking out of the handgun and into your field of view.[11]

Whitfield cites no authority for this definition.

In their depositions, defendant officers Keller[12] and Lapin[13] testified that the gun was stovepiped. In contrast, defendant officers Aucoin,[14] Alonzo,[15] McMullen,[16] and Scanlan[17] testified that the gun did not appear stovepiped.

---

[6] *Id.* at 7.
[7] *Id.*
[8] R. Doc. 133-1 at 5.
[9] R. Doc. 122-4 at 11.
[10] R. Doc. 170-1 at 7-8.
[11] *Id.* at 8.
[12] R. Doc. 170-2 at 5-6.
[13] R. Doc. 170-3 at 6.
[14] R. Doc. 170-5 at 5.
[15] R. Doc. 170-6 at 6-7.
[16] R. Doc. 170-8 at 6.
[17] R. Doc. 170-9 at 6.

## II.    PENDING MOTION

In her motion, Whitfield argues that defendant officers should not be allowed to testify that the gun was stovepiped or jammed because physical evidence and the testimony of other defendant officers precludes such a conclusion.[18]  She further argues that the defendant officers should not be allowed to testify that the gun was stovepiped because they are not experts in firearms or their functions.[19]  To allow the defendant officers to opine that the extended magazine attached to the gun may have caused the jam, Whitfield says, would confuse and mislead the jury.[20]  In her reply, Whitfield adds that any such opinions elicited from the officers in testimony would be cumulative and improper under Rules 701 and 702 of the Federal Rules of Civil Procedure.[21]

In opposition, Defendants state "[w]ith respect to Plaintiff's motion as directed to the testimony of unidentified officers, Defendants agree that they will not be testifying or offering any evidence that the Grimes's evidence [ presumably, the gun] 'stovepiped.'"[22]  However, Defendants do intend to offer other theories about why the Grimes weapon did not eject a spent casing.[23]  Defendants argue that they should be allowed at trial to lay the foundation of the officers' experience in weapons under Rule 701 to permit them to opine as to the weapon's failure.[24]  Finally, Defendants note that this Court has already ruled on Najolia's ability to testify at trial.[25]

## III.    LAW & ANALYSIS

By consent of the parties, "stovepiping" cannot be offered as a theory as to why the gun malfunctioned.  To be clear, however, "stovepiping" should not be construed as a universal term

---

[18] R. Doc. 170-1 at 7.
[19] *Id.* at 11.
[20] *Id.*
[21] R. Doc. 243 at 1-3.
[22] R. Doc. 206 at 2.
[23] *Id.* at 2.
[24] *Id.* at 2-3.
[25] *Id.* at 1-2.

3

encompassing all gun jams. As Whitfield defines the term, it is a specific type of malfunction where a casing is caught by the handgun slide and can be seen sticking out of the gun.[26] Therefore, testimony related to this specific type of malfunction will not be allowed at trial.

In regard to Najolia, this Court previously denied Whitfield's motion to exclude his testimony.[27] Najolia is "qualified to opine on matters in the areas of both his expertise and his experience in handling firearms."[28] Therefore, his conclusions as to why the gun malfunctioned will be permitted at trial.

Finally, whether the defendant officers can opine about any cause of the failure of the Grimes weapon to eject a spent casing or about any other weapon-malfunction theory (including whether the extended magazine may have caused a jam) cannot be determined until a proper foundation has been laid at trial. Likewise, the Court reserves to trial its determination whether any testimony is cumulative and requires limitation.

## IV.   CONCLUSION

Accordingly, based on the foregoing reasons,

IT IS ORDERED that the motion *in limine* of plaintiff Arabia Whitfield to exclude and/or limit testimony of officers and defendants' expert, Kerry Najolia, regarding extended magazines causing firearms to jam is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that, based on the consent of the parties, Defendants may not testify or offer any evidence at trial that Grimes's gun "stovepiped."

IT IS FURTHER ORDERED that defendant officers may only testify as to other causes of the weapon's failure if a proper foundation for such testimony has been laid at trial.

---

[26] R. Doc. 170-1 at 8 (picturing a "stovepiped" 9 mm Glock).
[27] R. Doc. 160.
[28] *Id.* at 5.

IT IS FURTHER ORDERED that Kerry Najolia may testify as ordered in this Court's April 21, 2021 Order & Reasons, R. Doc. 160.

New Orleans, Louisiana, this 16th day of June, 2021.

                                                                BARRY W. ASHE
                                                                UNITED STATES DISTRICT JUDGE